UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                   Case No. 2:17-cr-10
                                   HON.  PAUL L. MALONEY

KARL F.W. MONKEMEYER,

       Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

       Defendant Karl F.W. Monkemeyer is charged with theft of government property in violation of 18 U.S.C. § 641.  The matter before the undersigned is Defendant's "Motion to Dismiss on Statute of Limitations Grounds."  (ECF No. 40).  The Government responded (ECF No. 47), and Defendant replied (ECF No. 51).  For the reasons stated below, the undersigned recommends that Defendant's motion to dismiss be granted in part and denied in part.

       The parties agree that the facts in this case are "largely undisputed."  In the 1970s, Defendant served in the United States Army.  On May 28, 2009, Defendant filed an initial claim for disability with the Department of Veteran Affairs ("VA").  The initial claim paperwork submitted by Defendant included an official DD – 214 form, which indicated that Defendant received an honorable discharge in 1972.  Defendant was subsequently granted an 80% disability rating and received an initial retroactive payment of $16,430.00 on April 6, 2010.  After this initial payment, Plaintiff began receiving disability payments on a monthly basis that were directly deposited into his bank account.

On October 26, 2011, during an administrative review of Defendant's file, the VA noticed an apparent "pen-and-ink alteration" on Defendant's DD – 214 form.  Shortly thereafter, the VA obtained a "clean" copy of Defendant's DD – 214 form, which revealed that Defendant was discharged "under conditions other than honorable."  Following a short investigation, the VA sent Defendant a letter on February 8, 2012 notifying him of the proposed termination of his benefit payments effective June 1, 2009.  The letter also informed Defendant of his right to request a hearing to present evidence against the proposed termination, as well as his ability to suspend disability payments pending any final decision.  Defendant requested a hearing, and a hearing was held on October 30, 2012.  On June 12, 2013, the VA determined that Defendant's discharge was under other than honorable conditions and Defendant's benefits were terminated.  Defendant has appealed the VA's decision and the appeal is still pending.

On March 15, 2017, a grand jury returned an indictment charging Defendant with one count of theft of government property in violation of 18 U.S.C. § 641.  The indictment alleged that "[b]eginning in or about July 2009 and continuing until in or about June 2012" Defendant "did willfully and knowingly steal, purloin, and convert to his own use money of the United States Department of Veterans Affairs, a Department of the United States, of a value exceeding $1,000, namely, disability benefits of approximately $142,284.00." (ECF No. 1).[1]

Defendant has moved to dismiss the indictment as barred by the statute of limitations.  He is charged under the first paragraph of 18 U.S.C. § 641, which in pertinent part provides: "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any . . . money, or thing of value of the United States or of any department or agency thereof . . . [s]hall be fined under this title or

---

[1] Although Defendant continued to receive disability payments until June 2013, the Government only charged Defendant for the disability payments that he received between July 2009 and June 2012.

imprisoned not more than ten years, or both." The applicable statute of limitations for an offense charged under § 641 is five years. *See* 18 U.S.C. § 3282 ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.").

Generally, "[t]he statute of limitations begins to run when a crime is complete, that is, when each element of the crime charged has occurred." *United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008). However, an exception exists when the crime is a "continuing offense." *Toussie v. United States*, 397 U.S. 112, 114 (1970). A continuing offense "is not complete for statute of limitation purposes until the proscribed course of conduct is completed or discontinued." *United States v. Reese*, 254 F. Supp. 3d 1045, 1048 (D. Neb. 2017) (citing *United States v. Jacob*, 781 F.2d 643, 648 (8th Cir. 1986)). "The hallmark of the continuing offense is that it perdures beyond the initial illegal act, and that 'each day brings a renewed threat of the evil Congress sought to prevent' even after the elements necessary to establish the crime have occurred." *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999) (quoting *Toussie*, 397 U.S. at 122). Common examples of continuing offenses include conspiracy, kidnaping, and escape. *Id.*

The issue in this is case is whether Defendant is charged with a continuing offense.[2] If the offense constitutes a continuing offense, the statute of limitations would not have begun to run until the monthly payments were discontinued in June 2012, which is within the five-year statute of limitations. If, however, it is not a continuing offense, at least some of the charged

---

[2] To the extent the Government is arguing that a jury must decide this issue because it involves mixed questions of fact and law, it is mistaken. The parties agree that the facts are "largely undisputed." And, as the Government concedes in its response brief, whether Defendant is charged with a continuing offense is a question of law. (ECF No. 47, PageID.87). "A motion under Rule 12 is therefore appropriate when it raises questions of law rather than fact." *United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009).

conduct—the conduct occurring before March 15, 2012—falls outside the five-year statute of limitations.

The Sixth Circuit has not addressed whether an offense under § 641 can constitute a continuing offense. *United States v. Tackett*, 2011 WL 4005347, at *4 (E.D. Ky. Sept. 8, 2011). The starting point for the undersigned's analysis is *Toussie v. United States*, 397 U.S. 112 (1970). In that case, the Supreme Court established a two-part test to determine whether a crime constitutes a continuing offense. *Id.* at 115. A crime qualifies as a continuing offense if "[1] the explicit language of the substantive criminal statute compels such a conclusion, or [2] the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* The Court began its opinion by discussing the purpose of the statute of limitations:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before 'the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose,' [citations omitted].

*Id.* at 114-15. Based on these principles, the Court determined that the "doctrine of continuing offenses should be applied in only limited circumstances." *id.* at 115, and that "continuing offenses are not to be too readily found," *id.* at 116. The Court then applied the two-part test to the offense of failing to register for the draft and determined that it did not constitute a continuing offense. *Id.* at 120-23. The Court reasoned that "there is no language in [the registration] Act that clearly

contemplates a prolonged course of conduct," *id.* at 120, and "there is also nothing inherent in the act of registration itself which makes failure to do a continuing crime," *id.* at 122.

Although the Sixth Circuit has not yet addressed whether an offense under § 641 constitutes a continuing offense, several other federal courts have weighed in and are divided on the result. *United States v. Reese*, 254 F. Supp. 3d 1045, 1048 (D. Neb. 2017) (collecting cases). Defendant asks the Court to adopt the Seventh Circuit's approach in *United States v. Yashar*, 166 F.3d 873 (7th Cir. 1999), in which the court determined that embezzlement can never constitute a continuing offense. Even though *Yashar* involved a different embezzlement statute, courts have applied its reasoning when determining that § 641 cannot constitute a continuing offense. *See, e.g.*, *Reese*, 254 F. Supp. 3d at 1050; *United States v. Henrikson*, 191 F. Supp. 3d 999, 1004 (D.S.D. 2016); *United States v. Bundy*, 2009 WL 902064, at *9 (D.Me. Mar. 31, 2009). In *Yashar*, the defendant allegedly received $9,223 from the City of Chicago for work that he did not perform between September 1, 1991 and September 1, 1992. 166 F.3d at 875. The government charged the defendant with violating 18 U.S.C. § 666, "which makes it a federal crime for an agent of a local government or agency to embezzle, steal, obtain by fraud, or otherwise misapply property of that government or agency that is valued at more than $5000, during any one-year period in which the local government or agency receives federal benefits in excess of $10,000." *Id.*[3] The district court granted the defendant's motion to dismiss based on the five-year statute of limitations. *Id.* On appeal, the parties agreed that § 666 did not meet the definition of a continuing offense under *Toussie*. *Id.* at 876. But the government argued that *Toussie* should not apply to cases "in which

---

[3] Despite being aware of the alleged crime in 1994, the government did not bring the formal charge until 1998. However, the defendant signed a waiver on August 13, 1997 that tolled the statute of limitations. Accordingly, the alleged conduct from September 1, 1991 to August 13, 1992 occurred outside of the five-year statute of limitations and the alleged conduct from August 14, 1992 to September 1, 1992 occurred within the five-year statute of limitations.

the defendant's affirmative acts or course of conduct causes the offense to continue" and "[i]n those cases . . . the offense is not completed until all criminal conduct related to that scheme is exhausted." *Id.*  The Seventh Circuit rejected this argument, finding that *Toussie* controlled and the government's approach would be effectively adding a third element to the *Toussie* test.  *Id.* at 877.  The Seventh Circuit explained:

> [T]he active or passive nature of a defendant's actions has never been the benchmark of a continuing offense under *Toussie*. Instead, the focus is on the statutory language. If the statute describes an offense that by its nature continues after the elements have been met, then the offense is a continuing one regardless of the nature of defendant's actions beyond that point.

*Id.* The Seventh Circuit also determined that the government's approach would "transform the limitations period from a check on governmental delay in prosecution to a function of prosecutorial discretion."  *Id.* at 879.

The Government requests that the Court adopt the Fourth Circuit's approach in *United States v. Smith*, 373 F.3d 561 (4th Cir. 2004).  Under this approach, a passive embezzlement scheme under § 641 could be considered a continuing offense depending on the facts of the specific case.  *Id.* at 568. In *Smith*, the defendant's mother received monthly social security benefits, which were directly deposited into a joint checking account.  *Id.* at 563.  After she passed away, the defendant failed to report her death and continued to collect her benefits from March 1994 to February 1998.  *Id.*  In January 2003, the defendant was indicted on one count of embezzlement in violation of § 641.  *Id.*  To determine whether the defendant was charged with a continuing offense, the Fourth Circuit focused on the definition of embezzlement, explaining that "[e]mbezzlement is the type of crime that, to avoid detection, often occurs over some time and in relatively small, but recurring, amounts."  *Id.* at 567 (citations omitted).  The Fourth Circuit then determined that § 641 was a continuing offense,

> [a]t least in those cases where the defendant created a recurring, automatic scheme of embezzlement under section 641 by conversion of funds voluntarily placed in the defendant's possession by the government, and maintained that scheme without need for affirmative acts linked to any particular receipt of funds-cases in which there is a strong "temporal relationship between the [completion of the] offense and culpability," (citation omitted) -we think that Congress must have intended that such be considered a continuing offense for purposes of the statute of limitations.

*Id.* at 567-68.  Applying this rule, the Fourth Circuit determined "that the specific conduct at issue [in the case was] more properly characterized as a continuing offense rather than a series of separate acts."  *Id.* at 568.  However, the Fourth Circuit further narrowed its holding by stating that not all embezzlement should be treated as a continuing offense and that in some instances the offense may be properly characterized as a series of acts that occurred over time.  *Id.*

In the opinion of the undersigned, the Court should adopt the Seventh Circuit's approach and hold that that an offense under § 641 can never constitute a continuing offense.  This approach is consistent with the Supreme Court's statements that the continuing offense doctrine should be applied narrowly and that continuing offense are not to be readily found.  Applying the two-part *Toussie* test, (1) the text of the first paragraph of § 641 does not indicate that it is a continuing offense, and (2) the nature of the offense does not suggest that Congress must have intended it to be a continuing offense.  If Congress intended for some offenses under § 641 to be considered a continuing offense, "it should have spoken in language that is clear and definite." *Toussie*, 397 U.S. at 122 (citation omitted).

In addition, the Fourth Circuit's approach is inconsistent with two-part *Toussie* test. As stated above, the Supreme Court instructs lower courts to apply a two-part test when determining whether an offense is a continuing offense.  The court must look at the language of the statute and the nature of the substantive offense.  But, in the opinion of the undersigned, the

test does not permit a court to delve into a case-by-case analysis, looking at the defendant's specific conduct in each situation.   "[W]hether an offense is continuing in nature does not change depending on the manner in which the offense is committed." *United States v. Smith*, 373 F.3d 561, 569 (4th Cir. 2004) (Michael, J., dissenting).   If the Court adopted the Fourth Circuit's approach, the date the statute of limitations began to run would change depending on whether the defendant physically deposits a check at a bank or whether the defendant has the money directly deposited into his bank account.   The Fourth Circuit's approach would also allow the Government's charging decision to alter the statute of limitations.   The Seventh Circuit demonstrated this problem in the following hypothetical:

> At oral argument, we posed a hypothetical to the government in which a ghost payroller received $15,000 in salary in 1970 and, 25 years later, received $300 in retirement benefits attributable to that sham employment. The government declared that the limitations period might not begin to run on the 1970 conduct until after the retirement benefits were received in 1995, if the payments were deemed to be part of a single scheme. With this interpretation, the limitations period would apparently not begin to run until the person's death if that person received ongoing pension payments attributable at least in part to the ghost payrolling scheme.

*United States v. Yashar*, 166 F.3d 873, 879 (7th Cir. 1999) (footnote omitted).

> The *Smith* decision is not faithful to the Supreme Court's decision in *Toussie*:

> The fundamental problem with *Phan* is that both it and *Smith* create a tri-part test for "continuing offense" when the Supreme Court has made clear that there are but two alternative criteria. *Phan* has added to "explicit intent" and "inherent nature" a third: the circumstances of the individual case. It concluded "Phan's receipt of multiple checks forms 'a single, continuing scheme' and, thus, constitutes one continuing offense." [*United States v. Phan*, 754 F. Supp. 2d 186, 191 (D.Ma. 2010).] The Court in *Smith* reached a similar conclusion because of the facts of that case, expressly cautioning that "[t]his is not to say that all conduct constituting embezzlement may necessarily be treated as a continuing offense as opposed to merely "a series of acts that occur over a period of time"; indeed, it

may well be that different embezzlement conduct must be differently characterized in this regard." [*Smith*, 373 F.3d at 568.]

It is clear, however, that the "inherent nature" inquiry is to be made of the crime itself independent of any facts peculiar or unique to a particular case, *Bailey* expressly talked of "labeling crimes as continuing offenses," not characterizing particular circumstances. *Bailey*, 444 U.S. at 413, 100 S.Ct. 624. *Toussie*, inquiring into the generic "act of registration" rather than what the defendant had done, recognized the task as "construing a somewhat ambiguous statute," not as applying it to the circumstances of a given case. *Toussie*, 397 U.S. at 122, 90 S.Ct. 858. And *Snow* described "cohabitation" in general terms, as "a man . . . living in the same house with two women whom he had theretofore acknowledged as his wives, and eating at their respective tables, and holding them out to the world by his language or conduct, or both, as his wives, . . ." *Snow*, 120 U.S. at 281, 7 S.Ct. 556.

> The majority's opinion concludes that a particular offense, in this case embezzlement, may be treated as either a continuing offense or a non-continuing offense for statute of limitations purposes, depending on how the crime is carried out. *See ante* at 567-68. Because [I] do not believe this conclusion is consistent with the teachings of *Toussie v. United States*, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), I respectfully dissent.

*United States v. Smith*, supra at 568 (Michael, J., dissenting). *Accord, United States v. Niven*, 952 F.2d 289, 293 (9th Cir.1991) ("As [*Toussie*] makes clear, the analysis turns on the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue.").

In addition to going beyond *Toussie's* framework by holding "continuous offense" a fact-specific instead of offense-generic doctrine, the *Phan* conclusion that § 641 charges a continuing offense is inconsistent with the concept of "inherent nature." The hallmarks of an "inherently continuing" offense are "a particular statute . . . clearly contemplate[ing] a prolonged course of conduct", *United States v. Toussie*, *supra* at 120, 90 S.Ct. 858, and an escalating or "renewed threat of the substantive evil Congress sought to prevent." *Id.* at 122, 90 S.Ct. 858. A person may commit embezzlement by engaging in conduct that takes but a few minutes, or she may commit a series of acts over a long period of time that accomplish a single taking; but the embezzlement occurs at a discrete moment in time when the conversion is accomplished.

> There is nothing inherent in embezzlement that requires a prolonged duration. Similarly, multiple acts of embezzlement do not increase the evil in any way different from multiple holdups of the same convenience store or multiple shopliftings from the same retail establishment.

*United States v. Powell*, 99 F. Supp. 3d 262, 266 (D.R.I. 2015).  One commentator has aptly identified the problem with the Court's analysis in *Smith*. See Jeffrey R. Boles, *Easing the Tension Between Statutes of Limitations and the Continuing Offense Doctrine*, 7 Nw. J.L. & Soc. Pol'y 219, 235-46 (2012); *see also* Andrew P. O'Shea, Note, *Criminal Law—An Embezzlement Intermezzo: Scheming to Side-Step Toussie v. United States's Continuing Offense Test,* 35 W. New Eng. L. Rev. 249, 260-69 (2013).

It should also be noted that finding that the offense is not a continuing offense does not place an unreasonable burden on the Government—especially in this case.  The VA learned of Defendant's alleged criminal conduct in 2011 and began the process to terminate Defendant's benefits in February 2012.  Defendant's benefits were officially terminated in June 2013.  It is unclear why the Government waited until March 2017 to secure an indictment.

In addition, the reasoning in *Smith* does not necessarily apply to this case because Defendant is not charged with "embezzlement" under § 641.  In *Smith*, the Fourth Circuit focused on the definition of embezzlement and relied on the fact that embezzlement often occurs over a period of time.  373 F.3d at 567-68.  But in this case the indictment charges Defendant with stealing, purloining, and converting to his own use.   The Government contends that "embezzlement is simply the fraudulent conversion of the property of another by one who already possesses it."   (ECF No. 47, PageID.86).  This is correct, but conversion is broader than embezzlement and encompasses other acts.  *See Morissette v. United States*, 342 U.S. 246, 272 (1952) ("It is not difficult to think of intentional and knowing abuses and unauthorized uses of

government property that might be knowing conversions but which could not be reached as embezzlement, stealing or purloining.").   And, unlike embezzlement, conversion does not generally occur over a period of time.  In the opinion of the undersigned, there is nothing inherent in the nature of conversion which would indicate that Congress intended it to be a continuing offense.

Finally, although the undersigned finds that Defendant is not charged with a continuing offense, the indictment cannot be dismissed in its entirety.  The indictment in this case alleges conduct that occurred between July 2009 and June 2012.  The grand jury returned the indictment on March 15, 2017.  Thus, the alleged conduct occurring after March 15, 2012 is still within the five-year statute of limitations.   In its brief, the Government states that Defendant received payments on March 30, 2012, May 1, 2012, and June 1, 2012. In the opinion of the undersigned, these three payments cannot be dismissed based on the statute of limitations.[4]

Accordingly, the undersigned recommends that Defendant's motion to dismiss be granted as the criminal activity that occurred before March 15, 2012 and denied as to the criminal activity that occurred after March 15, 2012.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3. Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir.1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  July 9, 2018                                    /s/ Timothy P. Greeley
                                                               TIMOTHY P. GREELEY
                                                               UNITED STATES MAGISTRATE JUDGE

---

[4] If the Court adopts the Report and Recommendation, the issue of a duplicitous indictment arises. The Government asserts that a duplicitous indictment can be cured by a proper jury instruction and verdict form.  In the opinion of the undersigned, this issue should be resolved by the district judge.